(No. 97-CV-3409—)

*In re* APPLICATION OF RAUL ELIZONDO

*Order filed November 7, 1997.*
*Opinion filed May 14, 1999.*

RAUL ELIZONDO, *pro se*.

JIM RYAN, Attorney General (DONALD C. MCLAUGHLIN, JR., Assistant Attorney General, of counsel), for Respondent.

## ORDER

PER CURIAM.

This claim arises out of an incident that occurred on April 6, 1997. Raul Elizondo, father of the deceased victim, Rodolfo Garcia, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. 740 ILCS 45/1 *et seq*.

This Court has carefully considered the application for benefits submitted on June 19, 1997, on the form prescribed by the Attorney General and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That on April 6, 1997, the victim was fatally shot, allegedly by two offenders who were not known to him. The incident occurred at 644 Penn Avenue, Aurora, Illinois. Police investigation revealed that, prior to the incident, the victim, a known street gang member, flashed gang signals while at a party attended by rival street gang members. As a result of these actions, one of the rival street gang members produced a handgun and shot the victim as he was leaving the party. The alleged offenders were arrested and charged with first degree murder. The criminal proceedings against the alleged offenders are still pending.

2. That section 10.1 of the Act indicates factors used to determine entitlement to compensation. Specifically, section 10.1(d) of the Act states that an award shall be reduced or denied according to the extent to which the victim's acts

or conduct provoked or contributed to his injury or death, or to the extent to which any prior criminal conviction or conduct of the victim may have directly or indirectly contributed to the injury or death of the victim.

3. That it appears from the investigatory report and the police report that the victim initiated an altercation by flashing gang signals to members of an opposing street gang. This incident occurred as a result of their gang affiliation, gang rivalry and face to face provocation.

4. That the victim's conduct contributed to his death to such an extent as to warrant that the Claimant be denied entitlement to compensation.

5. That this claim does not meet a required condition precedent for compensation under the Act.

It is hereby ordered that this claim be, and is hereby, denied.

## OPINION

JANN, J.

This matter comes before the Court on the petition of the Claimant, Raul Elizondo, father of the deceased victim, Rodolfo Garcia. Claimant's petition seeks compensation pursuant to the Crime Victims Compensation Act, hereafter referred to as the Act (740 ILCS 45/1 et seq.), for burial expenses.

The procedural history is as follows:

On June 19, 1997, Claimant filed his petition for compensation.

On November 7, 1997, the Court entered an order which found that the victim initiated the altercation which resulted in his death by flashing gang signals to members of an opposing street gang. The claim was denied on the basis of the victim's contributory misconduct.

On December 5, 1997, Claimant filed his timely petition for hearing. Hearing was held on April 28, 1998, before Commissioner Elizabeth Rochford. Claimant, San Juana Elizondo, decedent's mother, and Chaplain Michael Murray testified at hearing.

The record indicates:

On April 6, 1997, the victim was assaulted and fatally shot by two offenders at 644 Penn Avenue, Aurora, Illinois. The police investigation stated that the victim, a known street gang member, flashed gang signals at a party attended by rival street gang members. One of the rival street gang members produced a handgun and shot the victim after a fist fight with another gang member and the decedent.

At hearing, Claimant, Raul Elizondo, appeared and disputed the findings of the investigatory report. Claimant testified that his son was moving his hands while dancing and not flashing gang signs. Claimant was not a witness and relied upon hearsay.

Following the hearing, Claimant produced portions of the transcript from the offender's murder trial. Witness Joseph Madrid testified under oath that, at the time of the police investigation, he told the police that the victim may have been throwing gang signs but that he wasn't sure. At the trial Madrid testified as follows:

"A. I don't think they were gang signs. He was just, you know, dancing, when you just move your hands. Disco music, you just move your hands."

Both Claimant and Mrs. Elizondo testified that, although their son was a gang member, his gang affiliation should be irrelevant to recovery under the fact scenario herein. Chaplain Murray claimed to "represent" Claimant and Mrs. Elizondo as a "qualified health professional" working with families of the victims of gang violence. The

hearing transcript, when taken as a whole, indicates that all three witnesses mistakenly believed that the Act is an entitlement of some form of universal insurance. Chaplain Murray also made an impassioned plea for political support of his "program" which was not clearly defined and appeared to have absolutely no relevance to the gravamen issue of fact determinative of an award under the Act.

We have carefully reviewed the voluminous police report, which includes numerous witness statements and is part of the departmental report filed herein by the State. Claimant's allegations rebutting the conclusions in the Court's order denying this claim were duly considered in our scrutiny of the record and investigatory report. We are only too aware of the tragic loss suffered by the Elizondo family and regret that similar incidents are all too frequently before us.

Our review indicates that our original order was in error as it relied upon the sole action of the decedent in allegedly "flashing gang signs" while dancing at the party, which behavior directly led to his demise at the hands of rival gang members. Decedent's activities at the party included a fist fight with rival gang members just prior to the shooting. The statements of his companions, Ms. Soto and Ms. Carrillo, clearly indicate decedent's gang affiliation was widely known, as was the fact that rival gang members were present at the party. Apparently, the hostess had specified that no gang colors were to be worn at the party. However, the assailants wore gang hats as identified by numerous witnesses. A sign on the front door of the house where the party was held was seized as evidence. The sign stated no gang colors would be allowed at the party. Said sign belies the allegation that persons attending the party were unaware of the probability of conflict due to gang rivalries.

The record as a whole indicates that the decedent's gang affiliation, attendance at a party with known rival gang members and participation in a fist fight directly contributed to his death to such an extent as to warrant denial of this petition for compensation.

This claim is hereby denied and dismissed with prejudice.